**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| CELLULAR SOUTH REAL ESTATE, INC. d/b/a CELLULAR SOUTH | ) ) ) | |
| Plaintiff, | ) ) | No. 2:12-cv-02888-JPM-tmp |
| v. | ) ) | |
| CITY OF GERMANTOWN, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Cellular South Real Estate, Inc. ("Plaintiff" or "Cellular South") brings this suit under the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7)(B)(i)(II) and (iii) ("TCA") alleging that Defendant City of Germantown ("Defendant" or "City") wrongfully denied permission to build personal wireless services facilities ("WSF"). The parties have decided to have this issued determined purely on the trial briefs.

For the reasons set forth in this opinion, this Court holds that Plaintiff was wrongfully denied approval of building WSF on under 47 U.S.C. § 332(c)(7)(B)(i)(II) and (iii). Accordingly, the decision of the City Board of Zoning Appeals' denial of Cellular South's application is REVERSED, and the case is REMANDED to the City Board of Zoning Appeals for further action in conformity with this opinion.

## I.   PROCEDURAL HISTORY

On October 10, 2012, Plaintiff filed an action against the City of Germantown, Tennessee.  (Compl., ECF No. 1.)  Count I of the Complaint alleges that the City's denial of Cellular South's Application was not supported by substantial evidence as required by 47 U.S.C. § 332(c)(7)(B)(iii).  (See id. ¶¶ 20-34.)  Count II of the Complaint alleges that the City's denial effectively prohibited the provision of personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).  (See id. ¶¶ 35-42.)  Count III alleges that the City's denial violated 47 U.S.C. § 332(c)(7)(B)(iv) on the grounds that the City unlawfully based its denial on alleged negative effects of radio frequency emissions.  (See id. ¶¶ 43-55.)

On March 11, 2013, the parties filed their Rule 26(f) Report, where the parties agreed that "[t]he issues in this action are purely legal." (ECF No. 13 at 1.)  Accordingly, "[t]he parties agree that this Court's review is in an appellate-type capacity and should be limited to the legal issues stated above and as outlined in Cellular South's Complaint." (Id. at 2.)  On March 12, 2013, the City filed its Answer.  (ECF No. 14.)  On March 18, 2013, the Magistrate Judge entered the Scheduling Order.  (ECF No. 15.)

On May 3, 2013, the City filed the Administrative Record on Appeal in this case, "containing all of proof submitted before

the [City of Germantown] Board of Zoning Appeals." (ECF
No. 17.) On May 17, 2013, Cellular South filed a Stipulated
Supplementation of Record. (ECF No. 18.) Collectively, these
submissions constitute the Record on Appeal ("R.").[1]

On June 10, 2013, Cellular South filed its Initial Trial
Brief. (ECF No. 19.) On July 19, 2013, the City filed its
Response Brief. (ECF No. 20.) On July 31, 2013, Cellular South
filed its Reply Brief. (ECF No. 21.)

## II. FINDINGS OF FACTS

Cellular South Real Estate, Inc., doing business as
Cellular South, is a Mississippi corporation with its principal
place of business in Ridgeland, Mississippi. (R. 110-11, ECF
No. 17-6 at PageID 225-26.) Cellular South is authorized to do
business in Tennessee. (R. 108-09, ECF No. 17-6 at PageID 223-
24.) Defendant City of Germantown is a municipality located in
Shelby County, Tennessee. (Compl. ¶ 2, ECF No. 1; Answer ¶ 2,
ECF No. 15.)

On or about July 13, 2012, Cellular South submitted to the
City its Application for Use on Appeal to construct a WSF.
(R. 142—77, ECF Nos. 18-2, 18-3.) Cellular South's proposed
site for the WSF is "on property owned [by] Faith Presbyterian
Church of Germantown," located at 8834 Poplar Place. (R. 142,

---

[1] The Record on Appeal will consist of the City's submissions (R. 1-130; ECF
Nos. 17-2, 17-3, 17-4, 17-5, 17-6) and Cellular South's submissions (R. 131-
177; ECF Nos. 18-1, 18-2, 18-3), which are sequentially paginated.

ECF No. 18-2 at PageID 259.)  The proposed WSF tower is designed
as a concealed belfry tower and "is to be 100 feet in height
. . . [with a] 40 ft. by 40 ft. lease[d] area around the tower
[that] will contain the equipment for the C-Spire antennas and
future antennas."  (R. 132, ECF No. 18-1 at PageID 249; see also
R. 160-77, ECF Nos. 18-2, 18-3 at PageID 277-94, (Neel-Schaffer
designs for communication tower).)  Further, the proposed tower
is "be designed to withstand winds of 70 miles per hour and 1/2
inch radial ice in accordance with the ANST/TIA/EIA-222-F-1996
Standard."  (R. 151, ECF No. 18-2 at PageID 268 (Aug. 21, 2012,
letter from Neel-Schaffer engineer).)  Moreover, "[t]he proposed
antennas will not interfere with established public safety
telecommunication structures" by using only frequency bands
licensed to Cellular South by the Federal Communications
Commission (FCC), which avoids "any possibility of interference
with television, radio, or emergency systems."  (R. 152, ECF
No. 18-2 at PageID 269 (Aug. 28, 2012, letter from Neel-Schaffer
engineer).)

The City's Ordinances allow wireless transmissions
facilities in residential zoning districts, if they meet certain
specific requirements.  (R. 132, ECF No. 18-1 (quoting Section
23-86 of zoning ordinance).)

On September 11, 2012, the Application was presented to the
Board of Zoning Appeals ("Board"), and the City -- acting

4

through the Board -- denied Cellular South's application to construct a WSF on the property owned by Faith Presbyterian Church located at 8834 Poplar Pike, Germantown, Tennessee 38138. (R. 131-35, ECF No. 18-1 at PageID 248-52 (Board meeting mins. for Sept. 11, 2012).) Four Board members were present: Ms. Elizabeth Boyd ("Boyd"), Mr. David Klevan ("Klevan"), Mr. Tony Salvaggio ("Salvaggio"), and Ms. Patricia Sherman ("Sherman"). (R. 131, ECF No. 18-1 at PageID 248.)

The meeting minutes indicate the finding that "[t]he proposed wireless transmission facility meets the location criteria for a use on appeal and the site area, setback, tower height requirements, buffer zone and ANSI standards for a [wireless transmission facility]." (R. 133, ECF No. 18-1 at PageID 250.)

At the meeting on September 11, 2012, however, there was a large, negative, public response by the residents of the City. Their concerns are as listed: adverse effects on property values (ECF No. 19-1 at PageID 313), blocking the sunset (id.), whether cell towers are located in residential areas (id.), the adverse effects of microwave emissions (id. at PageID 314), and simply not wanting to live next door to a cell tower (id. at PageID 317).

All four Board members denied Cellular South's application on the grounds that Germantown, TN, Ordinance 23-49(b) allows

the board to consider the "public health, safety, comfort or welfare of the inhabitants of the city" when deliberating whether to grant application for building a structure within the city limits. Board member Klevan voted no because he felt "there is a safety issue and that there is a lack of substantial impact in the area: he does not see a significant coverage increase that will benefit the community." (Sept. 11, 2011, Board Minutes, R. 135, ECF No. 18-1 at PageID 252; see also Tr., R. 19, ECF No. 17-2 at PageID 134.) Board member Salvaggio voted no because there are other alternative locations and the presence of the cell tower would compromise the welfare of the citizens and compromise the property values. (R. 19, 135.) Board member Sherman voted no because the tower was located in a zone marked residential and because of the uncertain impact it would have upon the neighborhood. (R. 135.) Finally, Board member Boyd voted no because she was "opposed to the tower being in a residential area and possibly having a negative effect on the surrounding neighbors." (R. 19, 135.) Because the board members relied on the justifications provided by the City's residents, the board members did not provide additional justification.

At the meeting on September 11, 2012, representatives for Cellular South made two assertions. First, Cellular South maintained that there was a gap in wireless communication

6

coverage and that the presence of a cell tower on the property
of Faith Presbyterian Church would close that gap.  (R. at 133-
34, ECF No. 18-1 at PageID 250-51 (responses by Cellular South
Representatives Robert Pierce and Melinda Bodie).)  The map
provided at the meeting illustrated this point, and this
assertion went undisputed.  (ECF No. 20-1 at PageID 398-99
(coverage maps).)  Second, Cellular South considered other
alternative locations and such locations were not feasible.  (R.
at 133-34, ECF No. 18-1 at PageID 250-51.)  Taking into account
that the area was a residential zone, Cellular South proposed
that the tower be disguised as a free-standing bell tower.  (ECF
No. 20-1 at 400-02.)

## III. CONCLUSIONS OF LAW

Cellular South argues that it is entitled to judgment as a
matter of law on Counts 1 and 2 of its Complaint.  (ECF No. 19
at 1.)  Accordingly, the issues before the Court are as follows:
(a) whether the decision to deny Cellular South's Application
was not supported by "substantial evidence contained in a
written record," in accordance with 47 U.S.C.
§ 332(c)(7)(B)(iii), and (b) whether the Board's denial of
Cellular South's application effectively prohibited the
provision of personal wireless services in violation of 47
U.S.C. § 332(c)(7)(B)(i)(II).

## A. Substantial Evidence

The TCA provides, in part: "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). When determining whether evidence is considered substantial, the United States Court of Appeals for the Sixth Circuit applies the substantial-evidence standard defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." T-Mobile Cent., LLC v. Charter Twp. of West Bloomfield, 691 F.3d 794, 799 (6th Cir. 2012) (citing Universal Camera v. Nat'l Labor Relations Bd, 340 U.S. 474, 477 (1951)). "Substantial evidence should be substantiated." Id. at 800 (citing Telespectrum, Inc. v. Public Services Com'n of Ky., 227 F.3d 414, 424 (6th Cir. 2000) (holding that "unsupported opinion" does not constitute substantial evidence)). Mere allegations will not suffice. Id. "General concerns from a few residents that the tower would be ugly or that a resident would not want it in his backyard are not sufficient." Id. (citing New Par v. City of Saginaw, 301 F.3d 390, 399 n.4 (6th Cir. 2002)).

The Sixth Circuit reasoned that the purpose of requiring substantial evidence is:

If § 332 were read as broadly as the Township suggests and these generalized objections sufficed, any wireless facility could be rejected. Anyone who opposed a cell tower in their backyard could offer an excuse that it would be bad for the community, would not be aesthetically pleasing, or would be otherwise objectionable. But that by itself is not enough. There must be evidence. And not just any evidence -- evidence that is <u>substantial</u>. And substantial evidence must be substantiated by something. "Substantial evidence, in the usual context, has been construed to mean less than a preponderance, but more than a scintilla of evidence."

<u>West Bloomfield</u>, 691 F.3d at 801 (quoting <u>Cellular Tel. Co. v.</u>

<u>Town of Oyster Bay</u>, 166 F.3d 490, 494 (2d Cir. 1999).

Plaintiff argues that the Board's erroneous decision to deny its Application was based on five reasons: "(1) health concerns, (2) safety concerns, (3) preservation of property values, (4) aesthetics, and (5) lack of evidence of an increase in coverage area." (Pl.'s Trial Br. at 2, ECF No. 19.)

The Court addresses each of these arguments in turn.

## 1. Health Concerns

Cellular South argues that "the TCA expressly prohibits the denial of an application for a WSF based on alleged negative health effects from radio frequency emissions." (ECF No. 19 at 7.)

Regarding the alleged negative health effects of radio frequency emissions, the City contends that "the Board expressly acknowledged its understanding that federal law precluded the Board from denying Plaintiff's application on that basis during

the hearing." (ECF No. 20 at 6 n.3. (citing R. at 16-17).) The City also asserts that "none of the Board members cited the negative health effects of radio frequency emissions as his or her basis for denying Plaintiff's application." (Id. (citing R. at 6).) Thus, the City argues that "Plaintiff's argument on this point is without foundation." (Id.)

The Board acknowledged that federal law precludes the Board from denying Cellular South's application on the basis of alleged negative health effects. (R. 16-17.) Because Defendant's denial of Plaintiff's application was not based on negative health effects, Cellular South's appeal on this basis is without merit.

### 2. Safety Concerns

Cellular South argues that the "evidence submitted by Cellular South to the Board was unrebutted by any relevant, admissible evidence calling into question the safety of the design or location of the proposed WSF." (ECF No. 19 at 8.)

Regarding safety concerns, the City concedes that "the design of Plaintiff's proposed tower meets the ANSI/TIA/EIA-222-F-1996 Standard requiring the capability to withstand winds of 70 miles per hour and one-half inch of radial ice. The City further acknowledges that the proposed tower meets the City's height and setback requirements." (ECF No. 20 at 6 n.3.) "The

City, therefore, does not dispute Plaintiff's position relative to the safety issue." (Id.)

The Court finds that, although at least one Board member cited safety concerns as a basis for denying Cellular South's application, the City has conceded this issue. Accordingly, Cellular South's appeal on the basis of safety concerns is also without merit.

### 3. Property Values and Aesthetics

Regarding property values, Cellular South argues that "[n]either the residents that opposed Cellular South's Application, nor the members of the Board that rejected the Application offered any evidence whatsoever to support their lay opinions that the construction of the proposed WSF would negatively impact property values in the area." (ECF No. 19 at 9.) As for impact on aesthetics, Cellular South further contends that "[t]he generalized concerns of several Germantown residents regarding the aesthetics of the proposed WSF are virtually identical to the objections . . . rejected by the Sixth Circuit as legally insufficient to provide substantial evidence to deny an application for a WSF." (Id. at 11 (citation omitted).)

The City argues that its denial was based upon substantial evidence which showed negative aesthetic effect (ECF No. 20 at 7-8) and negative impact on the value of its residents'

properties (id. at 8).  The City asserts that the Board "did not premise its decision on the citizens' testimony concerning aesthetics, alone, or on the citizens' testimony regarding property values, alone."  (Id. at 9.)  Instead, the City contends that "the Board premised its decision on the cumulative effect of the citizens' testimony regarding the proposed Tower's negative effects on aesthetics and property values and Plaintiff's lack of evidence.  (Id. (emphasis added).)

The Court finds Defendant's arguments unpersuasive.  In its Response Brief, Defendant primarily relies on persuasive authority in the United States Court of Appeals for the Seventh Circuit -- namely, Helcher v. Dearborn County, 595 F.3d 710 (7th Cir. 2010) and VoiceStream Minneapolis, Inc. v. St. Croix County, 342 F.3d 818 (7th Cir. 2003) -- for the proposition that "it is not only proper but expected that the local government will consider the views of its constituents to be a particularly compelling form of evidence."  (ECF No. 20 at 7 (citing New Cingular Wireless PCS, LLC v. Fairfax Cnty. Bd. of Supervisors, 674 F.2d 270, 275 (4th Cir. 2012)).)  These two cases are distinguishable from the instant case.

In Helcher, the Seventh Circuit affirmed the zoning board's decision to deny an application for permission to construct a wireless communication facility.  595 F.3d at 713-14.  As noted by Plaintiff (ECF No. 21 at 2), the record in Helcher contained

12

substantial evidence: (1) testimony from "[a] real estate appraiser [who] addressed property values and concerns regarding potential hazards to children presented by the proposed tower," 595 F.3d at 715, (2) "a report filed by . . . a consulting firm[,] [which] conceded that the proposed tower would provide the desired coverage . . . but suggested that other sites could deliver superior service with a smaller impact on the surrounding community," id., and (3) "software-enhanced photographs based on those taken during Bell's balloon test, modified to show a scaled, graphical representation of the proposed tower" and how the tower "would reduce their property values, change the character of the neighborhood, and be visually intrusive," id. at 720. The Seventh Circuit therefore concluded that the board's decision rejecting the permit for noncompliance with zoning ordinance was supported by substantial evidence. Id. at 722-27.

The only objective evidence that was introduced in support of Defendant's position regarding the aesthetic impact of the tower was "a photograph depicting the current view from [a local resident's] front porch toward the location of the Tower, . . . and Plaintiff's renderings of the proposed Tower." (ECF No. 20 (citing R. 12, 21, 166, 175; ECF No. 17-2 at PageID 127, 136; ECF No. 18-2 at PageID 283, 292.) Although Plaintiff's rendering of the tower indicates that it would be visible for

some distance (see R. 175, ECF No. 18-2 at PageID 292), the rendering on its own is insufficient to establish by substantial evidence that the tower would have a negative aesthetic effect on the surrounding area. Unlike Helcher, the record in the instant case includes no testimony from a real estate appraiser, no expert reports regarding alternative locations, and no simulations or tests that demonstrate the aesthetic effect that the tower may have on the surrounding area -- other than an isolated rendering of the tower. Also, unlike Helcher, Cellular South's application met the City's ordinance requirements. (See R. 133, ECF No. 18-1 at PageID 250.)

VoiceStream is similarly distinguishable. VoiceStream concerned a "185-foot tower on the river bluff extending noticeably above the tree line" that contrasted with "the extraordinary scenery of the National Scenic Riverway and with the historic district in the City of Marine on St. Croix." 342 F.3d at 832. The National Park Service objected to the construction of the tower and "supported its position with maps developed during the crane testing that showed that a tower on the Haase site would be visible from locations up to four miles away on the St. Croix River and Minnesota Highway 95 and from the [City of] Marine on St. Croix Historic District." Id. "The tower's visibility from various sites in the City of Marine on St. Croix was confirmed by photographs submitted to the board by

14

local residents." Id. The evidence demonstrated that "the proposed tower would predominate the landscape of the bluff overlooking the Riverway." Id. As a result of the evidence "grounded in the specifics of the case," the Seventh Circuit found that the County's decision to deny VoiceStream a special exception to build a telecommunications tower "did not violate the substantial evidence requirement of § 332(c)(7)(B)(iii)." Id. (internal quotation marks omitted).

In contrast to the evidence in VoiceStream, other than the Plaintiff's rendering of the tower that indicates that it will be visible from some unknown distance away (see R. 175, ECF No. 18-2 at PageID 292), no objective evidence exists regarding the aesthetic impact the tower will have on the surrounding area. The record is devoid of information regarding the distance from which the tower will be visible. There is no evidence that the tower is being constructed in an area with the "extraordinary scenery" of a National Scenic Riverway or that the tower would intrude on a historic district. Further, there is no evidence that the tower would "predominate the landscape."

The record in the instant case supports Plaintiff's position. T-Mobile Cent., LLC v. Charter Twp. of West Bloomfield, 691 F.3d 794, is instructive. In West Bloomfield, the Sixth Circuit found:

> While the concerns brought before the Board certainly
> relate to building a wireless facility that is
> aesthetically pleasing and 'harmonious with the surrounding
> area,' the evidence in the record is hardly substantial.
> The generalized complaints effectively amount to NIMBY --
> not in my backyard.

691 F.3d at 800.  For example, statements made during the board

meeting in West Bloomfield consisted of:

> "But I need to know if a resident says, you put an
> ugly tower in my <u>backyard</u> and you potentially decrease
> my property value; [m]y <u>backyard</u> is kind of where
> they're going to put this thing; [b]ut the final word
> is, would you want one of these cell towers in what
> would be, if I build a house there or build houses
> there, in my <u>backyard</u>?; [w]ould you want that in your
> <u>backyard</u>; [t]here will be towers and towers, and
> pretty soon I'll have Disneyland in my <u>backyard</u>."

<u>Id.</u> at 800 n.4 (alterations in original).

Like the citizens in West Bloomfield, several residents in

the instant case raised concerns regarding, <u>inter alia</u>,

potential decrease in property values.  (Board minutes, R. 134,

ECF No. 18-1 at PageID 251.)  Although the residents provided

their opinion as to the potential devaluation of their property

based on perceived negative impact on aesthetics, they did not

support their testimony with substantial evidence:

> [Resident 1]: I for one like [the city ordinances]
> because it keeps standardization in the community and
> keeps our property values . . . .  I have personally
> talked to neighbors in excess of half a mile radius
> and I have one neighbor that said that he didn't think
> that it would devalue his property. . . .  Our issue
> is today the devaluation and safety.
>
> . . . .

[Resident 2]: [W]hen I look at the westerly setting sun, I will be looking out in front of my house at this big large tower. I don't think that's something that I particularly want to look at, so my opinion is I don't want this.

. . . .

[Resident 3]: Thank you for the opportunity to express my viewpoints. I'm totally against it. No matter how much you dress up that tower, it's still a tower. How much, whatever you put it on it's there and it sticks up and it's degradious(?) [sic] to me.

. . . .

[Resident 4]: We feel that our property value deserves the same protection and concern of all the regulations in the City of Germantown as other residents deserve and expect.

. . . .

[Resident 5]: I'd rather see it stay in more of a commercial or office and other type of environment, not in our backyard.

. . . .

[Resident 6]: First of all, everything is equal when I start to sell my house. If somebody could lay by my pool and look up at the cell tower, (inaudible) clear to the sky, guess whose house they're going to buy, not mine.

. . . .

[Resident 7]: We don't want to live next door to a cell tower. That wasn't the bargain . . . .

(Tr. at R. 10-15, ECF No. 17-2 at PageID 125-30.)

Just as in West Bloomfield -- and in contrast to Helcher and VoiceStream -- these opinions are not based on objective evidence, and instead amount to asserting: "not in my backyard."

"[A] 'few generalized expressions of concern with aesthetics,' standing alone, cannot serve as substantial evidence on which to base a wireless permit denial." VoiceStream, 342 F.3d at 831 (quoting New Par v. City of Saginaw, 301 F.3d 390, 398 (6th Cir. 2002)). Accordingly, the Court finds that the City's reasons for denial concerning aesthetics and property values were not based on substantial evidence in the record. See Telespectrum, 227 F.3d at 424 (finding testimony by residential landowners regarding diminishing property values was merely "unsupported opinion" because the testimony was not supported by substantial evidence).

### 4. Coverage gap in personal wireless services

The Defendant City asserts that Plaintiff's maps and opinions about coverage are unsupported claims lacking substantiated evidence. This objection was first raised during the course of litigation and was not part of the record of the meeting on September 11, 2012. In West Bloomfield, the Township argued that the showing of a coverage gap was not based on sufficient evidence. Because that claim was raised in the course of litigation and was not present in the record, the issue is not properly before the Court. 691 F.3d at 803-04. The issue that is properly before this Court, as was before the Sixth Circuit in West Bloomfield, is whether or not the denial was based on substantial evidence in accordance with the City's

ordinances.  The City of Germantown never questioned whether there was a gap in coverage.  The City cannot retroactively add a basis for objection when it was never considered by the Board in the first place.  Rather, the City's scope of consideration is limited to considering what is present in the city ordinance:

> The board of zoning appeals in either approving, granting or denying a use, variance, or otherwise when proper, will consider whether or not the approval will impair an adequate supply of light and air to adjacent property, unreasonably increase the congestion of public streets, increase the danger of fire and endanger public safety or in any other way impair the public health, safety, comfort or welfare of the inhabitants of the city.

Germantown, TN, Ordinance 23-49(b).  The two asserted justifications that fall within this scope are objections regarding the general aesthetics and property values, neither of which has been substantiated by any evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii).

Because Defendant's arguments regarding a coverage gap in personal wireless service "are not properly before this court," West Bloomfield, 691 F.3d at 803, the Court declines to consider the merits of this argument.

**B.  Prohibiting the Provision of Personal Wireless Services**

The TCA provides, in part:  "The regulation of the placement, construction, and modification of personal wireless service facilities by any . . . local government . . . shall not

prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II). The Sixth Circuit has adopted a two-part test to determine whether a denial of an application prohibits the provision of wireless services: "[T]here must be (1) a 'showing of a "significant gap" in service coverage and (2) some inquiry into the feasibility of alternative facilities or site locations.'" T-Mobile Cent., LLC v. Charter Tp. of West Bloomfield, 691 F.3d 794, 805 (6th Cir. 2012) (citing MetroPCS, Inc. v. City & Cnty. of San Francisco, 400 F.3d 715, 731 (9th Cir. 2005), abrogated on other grounds by T-Mobile S., LLC v. City of Roswell, Ga., 135 S. Ct. 808 (2015)).

When considering the feasibility of alternative facilities or site locations, the Sixth Circuit adopted the "least intrusive" standard which requires the provider to show that the manner proposed to fill the gap in services is "the least intrusive on the values that the denial sought to serve." West Bloomfield, 691 F.3d at 808. This standard requires, at a minimum, a showing that there was a good faith effort to identify and evaluate less intrusive alternatives. See id.

Cellular South meets both prongs of the two-part test. West Bloomfield is again instructive. T-Mobile applied to build a WSF to fill a gap in its coverage in West Bloomfield Township, Michigan. West Bloomfield, 691 F.3d at 797. T-Mobile had

investigated other sites which were either not practical or not
feasible. Id. The application was denied by the Township's
Board of Trustees. Id. Under the MetroPCS standard, T-Mobile
needed to show that there was a "significant gap" in its own
services in order to satisfy the first prong of the analysis.
West Bloomfield, 691 F.3d at 805. T-Mobile thus submitted
propagation maps along with a report by a radio frequency
engineer to show that there was in fact a gap. Id. at 807. The
court found that this was enough evidence to show that there was
a gap. Id. at 807-08 (citing MetroPCS, 400 F.3d at 733).

In the instant case, the findings of the Court, supra, show
that Cellular South met the first MetroPCS prong. Plaintiff
demonstrated that there was a gap in its coverage and that the
presence of a WSF on the property of Faith Presbyterian Church
would fill the gap. (ECF No. 20-1 at 398-99.) The report
included coverage maps that showed a gap in coverage that would
be largely alleviated by the proposed WSF. (Id.) This report
provided by Cellular South is uncontradicted. Defendant
contests, however, whether the evidence supports a finding that
additional customers would be served by the addition of the WSF.
(ECF No. 20 at 12-13 ("Plaintiff had no evidence to support its
statement that the proposed Tower in this particular location
would enhance coverage to Plaintiff's customers.").) This
question is irrelevant to the analysis. The relevant inquiry is

whether there is a significant gap in the particular provider's

coverage that would be ameliorated by the addition of a new

telecommunications tower.  See Second Generation Properties,

L.P. v. Town of Pelham, 313 F.3d 620, 633 (1st Cir. 2002)

(finding that a contrary holding "might have the effect of

driving the industry toward a single carrier" in contravention

of the purpose of the statute); see also West Bloomfield, 691

F.3d at 806 ("The cramped reading of the Fourth Circuit -- which

requires a blanket ban to trigger a violation of the statute --

seems inconsistent both with the plain text of the statute as

well as the broader goal of the TCA to promote the construction

of cellular towers."); T-Mobile Ne. LLC v. Town of Ramapo, 701

F. Supp. 2d 446, 458 (S.D.N.Y. 2009) (noting that a provider-

based approach to the question of whether a significant gap in

coverage exists "sits more easily with the goals the TCA was

designed to advance").  Because the uncontradicted coverage maps

demonstrate that the proposed WSF would ameliorate a current

significant gap in Cellular South service, Plaintiff has met its

burden as to the first MetroPCS prong.

The Court finds Cellular South also met its burden as to

the second MetroPCS prong.  Plaintiff showed that it had

considered other sites for a WSF and had deemed those sites

inadequate to meet its needs.  (ECF No. 19-1 at 323.)

Specifically, a Cellular South representative addressed why the

suggested alternative sites at the intersection of Forrest Hill-Irene and Poplar Pike and at the "tree site on Forest Hill-Irene at the fire station" were unsuitable. Id. According to the representative, "there is actually a tower located on the south east corner that they already o[w]n." (R. 133, ECF No. 18-1 at PageID 250.) The representative testified that "because of the height limitation, coverage does not extend far enough down Poplar Pike." (Id.) As to the location at the fire station, the representative explained that because of the tree height, a tower at that location "would not provide any coverage." (Id.) According to the representative, "transmissions would basically be shooting directly into the tree line." (Id.) Other representatives testified similarly:

> [Representative 1]: [W]e're already co-located on the Verizon tower, so from the distance from there and the proposed area is about only a quarter mile and so we already have good coverage there, so placing a cell tower where we already have coverage and pretty good (inaudible) coverage is not a good economic solution to what we designed for it. . . .
>
> . . . .
>
> [I]f you'll look at the plots that I gave you, we are already providing service there, so providing a tower where we already have service is not a good economic solution. So what we would propose is to put something further west where we have weaker coverage to be able to serve our customers better.

(Tr. at R. 15 (statements by Robert Pierce), ECF No. 17-2 at PageID 130.)

> [Representative 2]: As [Representative 1] has stated, the other two sites that have been proposed by others are not feasible for what we need to have to be able to have the coverage that we want to give to the citizens of Germantown in our proposal.

(Tr. at R. 17 (statements by Cody Bailey), ECF No. 17-2 at PageID 132.)

The Court concludes that Cellular South put forth a good faith effort to find an alternative location for a WSF and that none was suitable. Accordingly, the Court finds that Cellular South has met its burden to demonstrate that it inquired into the feasibility of alternative facilities or site locations. West Bloomfield, 691 F.3d at 808 (holding that T-Mobile's consideration and rejection of suggest alternative sites was "sufficient to make the requisite 'showing as to the intrusiveness or necessity of its proposed means of closing that gap'") (citing MetroPCS, 400 F.3d at 734).

Because Plaintiff has met its burden as to both of the MetroPCS prongs, the Court finds that the City's decision had "the effect of prohibiting the provision of personal wireless services" in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II).

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendant denied Plaintiff's application to construct a WSF in violation

of the Federal Telecommunications Act of 1996. 47 U.S.C.
§ 332(c)(7)(B)(i)(II), (iii). Accordingly, the decision of the
City Board of Zoning Appeals' denial of Cellular South's
application is REVERSED. The case is REMANDED to the City Board
of Zoning Appeals for further action in conformity with this
opinion. The City is directed either to grant the application
or conduct additional evidentiary hearings and decide the issue
anew on the basis of an expanded record within ninety (90) days.
Should the City choose to conduct additional hearings, Cellular
South must be afforded the opportunity to submit evidence.
Judgment is ENTERED for Plaintiff.

      **IT IS SO ORDERED,** this 22nd day of June, 2015.


                  /s/ Jon P. McCalla
                  JON P. McCALLA
                  U.S. DISTRICT COURT JUDGE